Filing # 132664453 E-Filed 08/13/2021 03:59:20 PM

IN THE CIRCUIT COURT OF THE 11th
JUDICIAL CIRCUIT IN AND FOR
MIAMI-DADE COUNTY, FLORIDA

GENERAL JURISDICTION DIVISION

CARMELO CALLEJAS,

CASE NO:

Plaintiff,

Fla Bar No: 105196

-vs-

CITY OF MIAMI BEACH, a Florida
municipal corporation, RICHARD CLEMENTS, in his
capacity as CHIEF OF POLICE for the City of
MIAMI BEACH, RICHARD OCEJO, in his capacity
as a CITY OF MIAMI BEACH POLICE
OFFICER,

Defendants.

_____/

## COMPLAINT AND DEMAND FOR JURY TRIAL

COMES NOW, Plaintiff, CARMELO CALLEJAS ("Mr. CALLEJAS"), by and through undersigned counsel, sues Defendants, CITY OF MIAMI BEACH ("MIAMI BEACH"), a Florida municipal corporation, RICHARD CLEMENTS, ("CLEMENTS") CHIEF OF POLICE for the City of MIAMI BEACH in his official capacity, RICHARD OCEJO ("OCEJO") Police Officer for City of Miami Beach in his official capacity and alleges:

1. This action arises out of the grievous injuries sustained by Mr. CALLEJAS when he was brutally attacked by MIAMI BEACH police officers. Mr. CALLEJAS asserts causes of action against the Defendants for personal injuries, violations of Mr. CALLEJAS' constitutionally protected rights as guaranteed by the United State

1

Constitution, the laws of the State of Florida, and common law.

2. Mr. CALLEJAS' federal claims are brought pursuant to 42 U.S.C. § 1983 which authorizes individuals to file actions to redress the deprivation of any rights, privileges, and immunities secured by the Constitution and laws pf the United States, and upon 42 U.S.C. § 1988 which authorizes the award of attorney's fees and costs to the prevailing parties in actions brought pursuant to 42 U.S.C. § 1983.

3. Mr. CALLEJAS' Florida claims are brought pursuant to Fla. Stat. § 768.28 which authorizes individuals to file actions against the state, its agencies and/or subdivisions for torts.

## JURISDICTION and VENUE

4. This Court has jurisdiction pursuant to §768.28 Fla. Stat.

5. This is an action for damages in excess of the jurisdictional limits of this Court.

6. Plaintiff has complied with all conditions precedent to this action. Specifically, pursuant to § 768.28(6)(a), Florida Statutes, notices of the state law claims were delivered to Defendants, MIAMI BEACH and CLEMENTS, with the required copies delivered to the State of Florida Department of Financial Services. More than six months have elapsed since the delivery of these notices.

## THE PARTIES

7. At all times material hereto, Mr. CALLEJAS, was a resident of Miami-Dade County, FL and is otherwise *sui juris*.

8. Defendant, MIAMI BEACH, is a municipality in the State of Florida. It operates controls and oversees the Miami Beach Police Department, its police officers,

2

employees, agents and representatives including but not limited to the officers who were involved in the attack on Mr. CALLEJAS.

9. At all times material hereto, Defendant, CLEMENTS, was employed by the City of Miami Beach Police Department, was licensed by the State of Florida to work as a police officer, is *sui juris* and was acting as Chief of Police for MIAMI BEACH.

10. At all times material hereto, Defendant, OCEJO was employed by the City of Miami Beach Police Department, was licensed by the State of Florida to work as a police officer, is *sui juris* and was acting as a police officer for MIAMI BEACH.

## FACTS COMMON TO ALL COUNTS

11. In the early morning hours of August 26, 2020, Mr. CALLEJAS was walking through Miami Beach's Normandy Isles neighborhood.

12. At the time of the incident, Mr. CALLEJAS was experiencing homelessness. He entered a property which he believed to be unoccupied with a female friend.

13. The property Mr. CALLEJAS and his friend entered, however, was not unoccupied. Its residents were home and noticed that Mr. CALLEJAS was on the property.

14. Upon realization that he the property was not, in fact, unoccupied, Mr. CALLEJAS fled the property understanding that he was not allowed to be there. He did not want to cause any commotion or trouble.

15. The residents called the police to report Mr. CALLEJAS as a trespasser.

16. MIAMI BEACH police officers reported to the scene and began a search for Mr. CALLEJAS throughout the neighborhood.

17. Mr. CALLEJAS attempted to hide when he heard police in the area so as to avoid

3

detection.

18. MIAMI BEACH K-9 police officer, Richard Ocejo (badge number 1022) along with his canine partner, "Thor", found Mr. CALLEJAS at or near 1710 Bay Drive, Miami Beach, FL.

19. Mr. CALLEJAS was laying down and prone attempting to avoid detection. Mr. CALLEJAS was unarmed and not posing any threat to anyone whatsoever. At no time did Mr. CALLEJAS intend, intimate or state that he would not be arrested or questioned peacefully.

20. Instead of attempting to ask Mr. CALLEJAS to come out or to identify himself, OCEJO instructed Thor to attack Mr. CALLEJAS into submission.

21. Without being prompted or baited, Thor, at OCEJO's direction, viciously and brutally attacked Mr. CALLEJAS while he was in a defenseless prone position on the ground.

22. Thor's teeth latched on to Mr. CALLEJAS' neck and head area and began to shake about.

23. Mr. CALLEJAS attempted to defend himself by putting his hands up to push away Thor, only for Thor to latch onto his hands and maim them as well.

24. Due to Thor's attack, Mr. CALLEJAS suffered severe and deep puncture wounds and lacerations on his neck, head, and hands. The resulting injuries caused Mr. CALLEJAS to begin to bleed profusely at the scene.

25. After having been maimed by Thor's vicious attack at OCEJO's direction, Mr. CALLEJAS' ordeal was still not over. When OCEJO and other unknown officers approached Mr. CALLEJAS to place him in hand cuffs they kicked, punched and

otherwise struck Mr. CALLEJAS while verbally abusing and berating him.

26. Mr. CALLEJAS lost a significant amount of blood in the vicious attack and required immediate emergency medical attention before he could be taken for processing.

27. Officers and/or emergency personnel at the scene noted that Mr. CALLEJAS' condition "did not look good".

28. Mr. CALLEJAS' injuries were so severe that he was taken to Jackson Memorial Hospital's Ryder Trauma Center ("JMH") by ambulance. The police officers who transported Mr. CALLEJAS to JMH misrepresented the reason for Mr. CALLEJAS' injuries by stating that it was caused after being "chased" even though it is indisputable that Mr. CALLEJAS never ran from police and did not engage in a chase with them.

29. The medical professionals at JMH found multiple puncture wounds to Mr. CALLEJAS scalp, deep lacerations to his neck and open fracture of his left index finger and thumb and a penetrating wound of his left thumb.

30. Mr. CALLEJAS injuries were so severe that he was not discharged from the hospital for four days.

31. Through his attorney, Mr. CALLEJAS made multiple requests for MIAMI BEACH to provide all police body camera videos taken of Mr. CALLEJAS' arrest pursuant to Florida's Sunshine Law. The request clearly noted the date of the arrest and Mr. CALLEJAS' name and identifying information.

32. In response, MIAMI BEACH only provided videos of the search for Mr. CALLEJAS and videos showing when Mr. CALLEJAS was already on a stretcher being carted

away to the hospital. MIAMI BEACH did not provide any video from any officer at the scene of Thor's attack on Mr. CALLEJAS, the actual arrest and handcuffing of Mr. CALLEJAS or the immediate aftermath. MIAMI BEACH's refusal to provide the complete video record shows MIAMI BEACH's intent to unlawfully withhold information from Mr. CALLEJAS and impede his ability to investigate and/or prove his claims.

33. At worst, MIAMI BEACH's refusal to provide complete video of the events demonstrate MIAMI BEACH's attempt to destroy or alter relevant evidence.

34. One of the police reports of the subject incident omits any reference to the severity of Mr. CALLEJAS injuries. The reports also conspicuously omits that Mr. CALLEJAS' injuries were caused by the Defendants' use of excessive force during Mr. CALLEJAS' arrest.

35. None of the police reports of the incident indicated the severity of the injuries Mr. CALLEJAS had sustained.

## DAMAGES and ATTORNEY's FEES (FOR APPLICABLE CLAIMS)

36. In his claims pursuant 42 U.S.C. §1983, Mr. CALLEJAS is entitled to recover damages against MIAMI BEACH, and in addition, is entitled to recover the following damages:

    a) Mr. CALLEJAS is entitled to recover hedonic damages suffered, in other words, the value as determined by the trier of fact, of Mr. CALLEJAS' past and future loss of enjoyment of his life.

    b) Mr. CALLEJAS is entitled to recover damages suffered for the deprivation of

due process of his constitutionally protected liberty interests as guaranteed by the 14th Amendment, and state law as incorporated by 42 U.S.C. § 1983.

37. Mr. CALLEJAS has retained legal counsel in this matter and is obligated to pay counsel reasonable fees for the services.

38. As to all claims made pursuant to 42 U.S.C. § 1983, Plaintiff shall be entitled to an award of attorney's fees pursuant to 42 U.S.C. § 1988 in the event that he prevails in those claims.

## COUNT I – Violation of Plaintiff's Fourth Amendment Rights, Pursuant to 42 USC § 1983

39. Plaintiff re-alleges paragraphs 1 through 38 of the allegations as though fully set forth herein.

40. On August 26, 2020, Defendant OCEJO and the Unknown Officers, acting under the color of state law as police officer(s) of the CITY OF MIAMI BEACH, deprived CARMELO CALLEJAS of his Fourth Amendment right under the United States Constitution to be free from unreasonable seizures of his person and the use of excessive force.

41. Upon information and belief, the officers were deliberately acting in accordance with a pattern, practice, or custom that was created, encouraged, promoted, accepted or permitted by the CITY OF MIAMI BEACH police department jointly with the CITY OF MIAMI BEACH of using excessive force during the arrests of individuals including allowing police dogs to attack defenseless arrestees; kicking, punching and/or otherwise abusing individuals; and otherwise using excessive force to arrest individuals who are not in any way resisting police officers and their commands.

42. Upon information and belief, the officers were also acting deliberately in accordance with a pattern, practice or custom that was created, encouraged, promoted, accepted or permitted by CITY OF MIAMI BEACH Police Department, jointly with the City of MIAMI BEACH of switching off body worn cameras during unlawful arrests and the transportation of unlawfully arrested individuals.

43. As a direct and proximate result of the violent attack, CARMELO CALLEJAS suffered numerous serious injuries as described *supra* as well as substantial pain and suffering. Mr. CALLEJAS will require substantial future care as a result of the arrest.

44. The conduct of OCEJO was intentional, outrageous, and demonstrated reckless or callous indifference to CARMELO CALLEJAS' rights, thus entitling him to punitive damages.

45. To the extent that CARMELO CALLEJAS prevails in the instant case, he is entitled to an award of attorney's fees and costs pursuant to 42 USC § 1988.

WHEREFORE, Plaintiff, CARMELO CALLEJAS, demands judgment against Defendants RICHARD OCEJO and the Unknown Officer(s), for compensatory damages, punitive damages, litigation costs, reasonable attorney's fees, and other relief this Court deems just and proper.

## COUNT II – Conspiracy to Violate Plaintiff's Fourth Amendment Rights Pursuant to 42 USC § 1983

46. Plaintiffs hereby re-allege paragraphs 1 through 44 as if fully set forth herein.

47. Defendant, RICHARD OCEJO and other Unknown Officers reached a mutual understanding with each other to violate Mr. CALLEJAS' civil rights. In furtherance of this conspiracy, OCEJO and the other Unknown Officers committed several overt

acts including but not limited to, the following:

a. Physically hitting, kicking, berating, biting and otherwise physically assaulting and battering CARMELO CALLEJAS;

b. Failing to stop or prevent the physical assault and battery of CARMELO CALLEJAS;

c. Failing to warn CARMELO CALLEJAS prior to ordering Thor, the police canine officer, to attack him;

d. Failing to attempt to peacefully apprehend and arrest Mr. CALLEJAS;

e. Ordering Thor, the police canine officer, to attack Mr. CALLEJAS when it was not reasonably necessary to do so as Mr. CALLEJAS did not present any threat to the officers or bystanders, was not belligerent, was not fleeing or otherwise disobeying orders to surrender;

f. Allowing Thor to latch onto and bite Mr. CALLEJAS for a greater duration than reasonably necessary or permissible under MIAMI BEACH police department procedures;

g. Allowing Thor to latch onto and bite Mr. CALLEJAS on a body part, his head and neck, that was not reasonably necessary or permissible under MIAMI BEACH police department procedures;

h. Defendant OCEJO and other unknown officers intentionally turned off all body worn cameras (a clear violation of police procedure) for the purpose of concealing the Defendants' illegal arrest and attack on Mr. CALLEJAS;

i. Giving false information to the persons involved in triage at JMH for the purpose

of creating a narrative that the attack was justifiable and for the purpose of portraying Mr. CALLEJAS in a false light;

j. Agreeing to file a report in which they misleadingly omitted the severity of Mr. CALLEJAS injuries;

48. As a direct and proximate result of the conspiracy between the Defendants, CARMELO CALLEJAS was unreasonably seized in violation of his rights under the Fourth and Fourteenth Amendments to the United States Constitution, which are protected under 42 USC § 1983.

49. As a direct and proximate result of the conspiracy and violent attack by the Defendants, CARMELO CALLEJAS suffered numerous serious and permanent injuries described *supra* as well as damages for pain and suffering. Mr. CALLEJAS will also require continued future medical care.

50. The Defendants' conduct demonstrated a callous indifference to Mr. CALLEJAS' rights, thus entitling Mr. CALLEJAS to punitive damages.

51. To the extent CARMELO CALLEJAS prevails in the instant case, he is entitled to an award of attorney's fees and costs pursuant to 42 USC § 1988.

WHEREFORE, Plaintiff, CARMELO CALLEJAS, respectfully demands judgment against Defendant RICHARD OCEJO and the Unknown Officer(s) for compensatory damages, punitive damages, litigation costs, reasonable attorney's fees, and any other relief this Court deems just and proper.

## COUNT III – Assault Under Florida State Law

52. Plaintiff hereby re-alleges paragraphs 1 - 51 as if fully set forth herein.

53. On or about August 26, 2020, Defendants OCEJO and the Unknown Officers

    a. Intended to unlawfully threaten violence to CARMELO CALLEJAS by moving their hands feet, arms and mouth as if to strike and injure CALLEJAS;

    b. CARMELO CALLEJAS apprehended that bodily harm or offensive contact from the Defendants' actions as he saw the Defendants striking and biting him.

54. As a direct and proximate result of the violent assault, CARMELO CALLEJAS suffered numerous serious injuries as described herein as well as permanent pain and suffering and will require future medical care.

55. The conduct of Defendant OCEJO and the Unknown Officers was intentional, outrageous and demonstrated evil motive and a reckless or callous indifference to CARMELO CALLEJAS rights, thus entitling him to punitive damages.

56. The CITY OF MIAMI BEACH is vicariously liable for the assault, as OCEJO and the Unknown Officers committed the act in order to facilitate an arrest falling within the scopes and authority of their employment as police officers.

WHEREFORE, Plaintiff, CARMELO CALLEJAS, respectfully demands judgment against Defendant RICHARD OCEJO and the Unknown Officer(s) for compensatory damages, punitive damages, litigation costs, reasonable attorney's fees, and any other relief this Court deems just and proper.

## COUNT III – Battery Under Florida State Law

57. Plaintiff hereby re-alleges paragraphs 1 - 56 as if fully set forth herein.

58. On or about August 26, 2020, Defendants OCEJO and the Unknown Officers intentionally caused an offensive and/or harmful contact with CARMELO

CALLEJAS's person as they used their hands, feet, mouths, and equipment to kick, bite, punch and injure Mr. CALLEJAS about his neck, head, hands and body.

59. As a direct and proximate result of the violent battery, CARMELO CALLEJAS suffered numerous serious injuries as described herein as well as permanent pain and suffering and will require continuing future medical care.

60. The conduct of Defendant OCEJO and the Unknown Officers was intentional, outrageous and demonstrated evil motive and a reckless or callous indifference to CARMELO CALLEJAS rights, thus entitling him to punitive damages.

61. The CITY OF MIAMI BEACH is vicariously liable for the assault, as OCEJO and the Unknown Officers committed the act in order to facilitate an arrest falling within the scopes and authority of their employment as police officers.

WHEREFORE, Plaintiff, CARMELO CALLEJAS, respectfully demands judgment against Defendant RICHARD OCEJO and the Unknown Officer(s) for compensatory damages, punitive damages, litigation costs, reasonable attorney's fees, and any other relief this Court deems just and proper.

## COUNT IV – Violation of Plaintiff's 14th Amendment Rights, Pursuant to 42 USC § 1983

62. All preceding paragraphs are re-alleged and incorporated herein.

63. While in the custody of CITY OF MIAMI BEACH police officers, CARMELO CALLEJAS' condition clearly indicated that he was at serious risk for severe injuries to his neck, head and hands including permanent nerve damage and/or paralysis. These conditions included, but were not limited to, having suffered serious physical trauma as the result of a police assault and battery, and severe emotional shock and

trauma from the police assault.

64. The police officers who responded to the scene and arrested CARMELO CALLEJAS were aware of all these problems because they were caused by the Defendant officers.

65. Accordingly, MIAMI BEACH permitted the unreasonably aggressive and violent means lacking any reasonable or compelling government interest, and thus subjected CARMELO CALLEJAS to, or caused CARMELO CALLEJAS to be subjected to a violation of his 14th Amendment right to equal protection of the law.

66. Likewise as a municipality authorized to detain suspected criminals under color of state it was required to provide medical care to detainees in medical need and not subject its detainees to unreasonable, violent and aggressive means of apprehension so as to respect the detainees rights.

67. As a direct and proximate result of the Defendants' arrest of Mr. CALLEJAS, CARMELO CALLEJAS suffered severe trauma due to the injuries he sustained in the arrest.

68. The conduct of the Defendants was intentional, outrageous, and demonstrated evil motive and reckless or callous indifference to CARMELO CALLEJAS' rights, thus entitling him to punitive damages.

69. To the extent that CARMELO CALLEJAS prevails in the instant case, he is entitled to an award of attorney's fees and costs pursuant to 42 USC § 1988.

WHEREFORE, Plaintiff, CARMELO CALLEJAS, respectfully demands judgment against Defendant RICHARD OCEJO and the Unknown Officer(s), and CITY OF MIAMI BEACH for compensatory damages, punitive damages, litigation costs, reasonable attorney's

fees, and any other relief this Court deems just and proper.

## COUNT V – Violation of Florida Sunshine Laws

70. All preceding paragraphs are re-alleged and incorporated herein.

71. The CITY OF MIAMI BEACH is a municipal corporation and controls and administers the CITY OF MIAMI BEACH police department.

72. MIAMI BEACH is an agency of the State of Florida, and as such, is governed by the public disclosure requirements of the Florida Public Records Law.

73. MIAMI BEACH has a policy which requires all of its police officers, including OCEJO and the Unknown Officer(s) to wear body worn cameras while on duty in their capacities as police officers.

74. Florida Statutes § 943.1718(3)(a) requires that any police department which requires its officers to wear body worn cameras also comply with Chapter 119 of Florida Statues.

75. Through his counsel on or about October 20, 2020, CARMELO CALLEJAS made a request for public records in the form of the video taken by the body worn cameras of the officers who responded to or were present at the scene of CARMELO CALLEJAS' arrest.

76. After six months, MIAMI BEACH finally responded with incomplete videos of the incident which completely failed to include any video of the actual arrest itself, when police officers first came upon Mr. CALLEJAS, what caused K9 Officer Thor to be sicced on Mr. CALLEJAS or how long his arrest took.

77. MIAMI BEACH knowingly and purposely denied CARMELO CALLEJAS access to

14

the information he was lawfully entitled to so that it could impede and frustrate Mr. CALLEJAS's attempt to pursue legal action against the MIAMI BEACH and its officers.

78. To the extent that CARMELO CALLEJAS prevails in the instant case, he is entitled to an award of attorney's fees and costs pursuant to Fla. Stat. § 119.12.

WHEREFORE, Plaintiff, CARMELO CALLEJAS, respectfully demands judgment against Defendant CITY OF MIAMI BEACH for compensatory damages, punitive damages, litigation costs, reasonable attorney's fees, and any other relief this Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a trial by jury of all issues triable by jury as a matter of right.

## CERTIFICATE OF SERVICE

**Respectfully submitted** this 13th day of August 2021.

THE BENNETT LAW CENTER
Attorney for Plaintiff
3377 S.W. 3rd Avenue
Miami, Florida 33133
(305) 648-2255
(305) 648-2256 Fax
richard@sblawcenter.com
service@sblawcenter.com

By: /s/ Richard Guzman /s/
RICHARD GUZMAN, ESQ.